Our next case this morning is Huber v. Berryhill. Mr. Richter. Thank you, Your Honors, and may it please the Court. My name is Matt Richter on behalf of Plaintiff Appellant Glenn Huber, Jr. In this case, there were a host of errors made by the ALJ which require remand. There were, in particular, far too many evidentiary omissions, many of which, or all of which, actually, suggest a more restrictive residual functional capacity and likely resulting finding of disability. This Court has long held that while an ALJ need not consider every item of evidence, he or she may not ignore entire lines of evidence which support a finding of disability. To enable meaningful review, the ALJ must build a logical and accurate bridge between the evidence and all of its conclusions, such that this Court may discern that he logically considered the record in its entirety. And that didn't happen here. First, the ALJ failed to consider a medical source statement from a consultative examiner who his own agency sent Mr. Huber to for evaluation and opinion of his limitations. Was that where he said it has difficulty withstanding, walking, bending over, and lifting? Yes, Your Honor. And that was not considered, you say? No, that was not considered as a medical source statement from an examining doctor. And that heading itself, meaning it is a medical, it's not some administrative thing? Right, so there were two areas in that examination. One where Mr. Huber gave his subjective complaints, and then there's also a bold heading which says medical source statement in which the consultative examiner seemingly adopted Mr. Huber's own complaints after examining him as his own opinion of his limitations. And the real problem there is that that opinion of difficulty standing, walking, bending is in conflict with the residual functional capacity that the ALJ ultimately assessed and which he found Mr. Huber could perform his best relevant work, which was light. Had he considered the consultative examiner's opinion, he may have come, or he likely would have come to a different residual functional capacity in that light work requires, it's defined as requiring a good deal of standing and walking. The Social Security ruling, I believe it's 8310, goes on to say that six hours of an eight-hour day standing and walking for light work. And it's our theory that the consultative examiner's opinion of difficulty standing and walking is in direct conflict with that ultimate residual functional capacity. What was his talent, I guess, before all of this set in? What was his job? He was an insurance agent. And that was labeled as light work. Yes, by the vocational expert. Now generally an insurance agent operates on commission, but maybe not. You meet with clients. Basically, I don't know, do you sell insurance, or is it something where he just goes over somebody's problems? And what does an insurance agent do in the mind of whoever's saying that's what he could do? Well, I think the basis for the light work when it comes to an insurance agent is that he may have to be out and about going to accident sites or something of that nature. Is that right? I don't know. I'm not exactly sure, but I just know that. That's trouble. And when you say an insurance agent, it can be somebody selling insurance, or it could be, as you point out, it could be somebody who's going in and evaluating the damage in an automobile when there's a car wreck. Right. Well, what I do know is that the Dictionary of Occupational Titles, which is what the Social Security Administration relies on to define these occupations, considers it light work. And then as it was described by Mr. Huber at his hearing to the vocational expert, the vocational expert deemed that to be light work as well. Requiring a good deal of walking, standing, et cetera. Yes, that's what the Social Security Regulation defines light work as. The ALJ actually didn't expand into exactly any standing and walking requirements in his residual functional capacity, which is sort of problematic in its own right in that the vocational expert would have needed to know how much standing and walking Mr. Huber could do in order to determine whether he could perform his past relevant work. So there isn't anything specific in the record what he actually did as an insurance agent? It would be in his testimony. I don't know exactly what he testified as to his amount of standing and walking in an eight-hour day. Well, it just seems to me that focusing on that, that's what he can do. That's what the ALJ said. And I just think that's a very broad term, frankly. You can do some things on the phone. You can call people. You can do whatever. Or you've got to be out and about and sometimes at a time when you don't really want to be. It may be late at night. It may be something else. Right. I think, Your Honor, that's the problem with relying on social security's problem and relying on a publication that was last updated, I believe, in the 80s, and that's how they determine what a person's job requirements are. Well, somebody must have looked about what he did. Maybe not. Maybe he said it's not really in that record. The point is that when you talk about light work, it could be a lot less light depending on what he does. That's all. If the job were sedentary, we could not affirm, could we? Because if he were able to do sedentary work, wouldn't he age out under the grids? Yes. He would have gridded out and been approved. So we couldn't affirm on the theory that, well, maybe he could do a sedentary version of the insurance agent work. Well, there was testimony, I believe, that said that there were no transferable skills from that light insurance agent job to a sedentary position. Even if there were, though, right? If there were transferable skills found by the vocational expert, then, yeah, he could do the sedentary job. But sort of moving on from the consultative examiner, there were other important evidentiary omissions and sort of a mischaracterization of Mr. Huber's medical record. The judge missed an EMG that confirmed motor and sensory neuropathy in Mr. Huber's lower extremity. I think just logically, having not considered that, the ALJ assessed a residual functional capacity that was less restrictive than he likely would have if he would have known that Mr. Huber had that neuropathy in his lower extremities. And then to credibility, as far as Mr. Huber's testimony regarding the intensity and persistence and limiting effects of his impairments, the judge invoked the conservative nature of his treatment, and that was actually not accurate. He did so for a couple of reasons, mainly his lack of surgical consultation with a neurosurgeon and his not having a regular narcotic regimen. At this point, I see I'm out of time. I'll just conclude. Thank you. That's fine. Thank you. Mr. Shepard. May it please the Court, my name is Eric Shepard, and I'm here to discuss with you why you should uphold the reasonableness of ALJ Pickett's decision. The first major reason why is, as the ALJ explained himself, millions of Americans work with difficulties. The other reason is the term slight at best. This Court has described the type of statement, the type of doctor statement that plaintiff relies on, has described the usefulness of that type of statement as slight at best. This Court should not send this case back to the ALJ for a more specific discussion of that statement and keep many, many more claimants waiting online when the usefulness of that statement is slight at best. Everyone knows that the appellant has difficulties. The ALJ knew it. The ALJ talked about it repeatedly in his decision. But when Congress wrote the Social Security Act, Congress demanded more than proof that a person has difficulties. Congress demanded that the person prove that they could not work. Here are the important things about the consultative examiner's statement upon which the appellant relies is that it never says what the appellant can't do. And it's interesting to note that appellant never... How do we go from the agency's consulting examiner saying difficulty standing or walking to, but he can still do it six hours a day? We go through it from the opinions of the state agency doctors. The state agency doctors looked at the opinion of the consultative examiner and came to the same conclusion about the RFC that the ALJ did. But we ordinarily give examining doctors' opinions more weight than the folks who just look at records, right? In the hierarchy, yes. But it's important to remember that there is nothing inconsistent with the consultative examiner's opinions and the state agency doctor's opinions. And so when the state agency doctors looked at that record and they looked at the consultative examiner's statement and they looked at his evidence as well as the evidence from the rest of the record, they concluded that the appellant was capable of doing light work and was capable of doing all the requirements of light work. So the two don't clash. If there was a clash between those opinions, that hierarchy of medical opinions might come into play. But there isn't one because the consultative examiner never specified what plaintiff or what appellant cannot do. Doesn't that mean you didn't get a sufficient report from the examination? I think there are two responses to that. The first is that appellant never raises that argument in their brief, and so it's been waived. Not in so many words, but everybody's debating the significance of Dr. Sorry, I can't read his signature, but the examiner's report. So why is this a sufficient basis? With this opinion, it's important to remember that the consultative examiner, there's no requirement that the consultative examiner actually give a medical opinion of a person's limitations. And so when you have the state agency doctors look at that data and look at that report and also look at the other evidence, they came up with the conclusion that the appellant could do light work. Well, what did he do, though? I mean, let me get back to the insurance agent. That's how I was kind of focused on. I mean, when I read this thing, he has difficulty with standing, walking, bending over and lifting. As you say, you don't go down to sedentary work, so it's not a matter of just sitting and talking on the phone or doing something. It seems to me it has to be more than that. Maybe you know. What did he do? I don't. Are you going back to an old definition and it doesn't matter what he did? I don't. The appellant didn't challenge any aspect of the vocational expert's testimony or the reasonableness of the ALJ's reliance on the vocational expert testimony. So they just said he could be an insurance agent. Excuse me? And that was it? The testimony was he could be an insurance agent? The vocational expert looked at the requirements of being a vocational expert, looked at the hypothetical residual functional capacity provided by the ALJ and said that they matched and that one could be an insurance agent and with the residual functional capacity that the ALJ ultimately ascribed to the appellant. Treating it as light work, right? Yes. Okay. Treating it as light work. Okay. And it's important to emphasize that the court in books specifically looked at this kind of statement provided by the consultative examiner and said the usefulness of this statement was slight at best. What's the purpose of this kind of exam? This exam, as it did in this case, provides a lot of raw medical data for the agency to use when assessing disability claims. What is the examiner supposed to report to the agency? I don't know of the exact requirements, but I know that in consultative exams the consultative examiner tests a lot of raw data related to that claim, and in this case the consultative examiner provided a lot of raw data. The consultative examiner confirmed, as the ALJ repeatedly said, that the appellant had normal strength, normal sensation, and normal muscle development. I believe on that exam the consultative examiner also discovered that the plaintiff walked normally and with no gait, and the state agency doctors looked at that data and they found that that was compatible with light work, and the ALJ deferred to the expertise of those doctors. I should also add that the ALJ did not ignore this medical store statement. The ALJ repeatedly addresses the difficulties that appellant claims, and in fact relies on the state agency doctors in part because they specifically considered plaintiff's difficulties. So one can trace the path of the ALJ's reasoning that the ALJ considered those difficulties and found that though there were difficulties, the difficulties did not preclude light work. Now I mentioned on the objective evidence that the three things that are important to remember is normal strength, normal sensation, normal muscle development on every single exam. That's what appellant showed. Appellant talks a little bit about neuropathy, but it's important to remember again normal sensation on every exam. A mere diagnosis, the usefulness of a mere diagnosis is also slight at best, as long as it doesn't show that there are accompanying symptoms or functional limitations related to that diagnosis. So we need to focus on functional limitations, and yet when the ALJ was discussing the report of that examination, he did not mention the finding about difficulty standing and walking, did he? The ALJ mentioned that appellant had difficulties with sitting, standing, and walking numerous times throughout the decision. The ALJ accounted for that, and in fact... But in discussing that medical examiner's report, overlooked that finding, correct? I have two responses to that. The first is I don't think that the ALJ overlooked that finding. I think one can discern... Did he mention it? That that exact medical source statement, no. Thank you. But again, the ALJ mentioned the difficulties, and the ALJ and the usefulness of that statement is slight at best. So for the reasons, again, because millions of Americans do work with difficulties and because sending this case back would force others to wait on line. So that's the second time you've made that point, counsel. Is it your theory that we ought to just go light on judicial review because there's a long line? No, not at all. I'm glad to hear that. I would just emphasize that making the ALJ address evidence that is not particularly useful does have costs, and it does have costs to other people who are waiting in line to have their claims adjudicated. Thank you. Mr. Director, anything further? So I would just make the point that a broad opinion from a medical source doesn't necessarily excuse the ALJ from considering that opinion and giving logical and accurate explanation. The problem is that it's vague. It is vague, Your Honor. I'm not sure what the ALJ would have done with this. Right. But we do have case law that says had the ALJ considered it to be vague, that he should have made every effort to get an explanation from the consultative examiner as to the specifics of the opinion. The audiologist report suffers from similar vagueness. Right. Right. Thank you. Thank you. Thanks to both counsel. The case is taken under advisement.